## Richmond.

### FINNEY V. EDWARDS AND ALS.

#### November 18.

I. A friendly suit is instituted in October, 1863, for the sale of land in which a number of persons are interested, in which there is a decree for a sale on a credit of six months, with the privilege to the purchasers to pay cash, and the commissioners are directed to give bond in the sum of $40,000. There is a sale, and the purchasers give their bonds for the purchase money, and afterwards pay part of the purchase money to the commissioner, who pays to several of the parties entitled their share of it, or a part of it. Upon a bill filed seven years afterwards, by the plaintiffs, to set aside the sale on the ground that they had not authorized the suit, and had not assented to the proceedings therein, and because one of the parties in interest, who joined as plaintiff in this suit, was not a party in that—HELD:

    1. It appearing that two of the parties in interest, acting for themselves and the other parties, had directed the institution of the suit; that many, if not all, the parties in interest were present in person or by their representatives, at the sale and made no objection to it, and that a number of the plaintiffs had received a part of the purchase money of the land; that the party who had been inadvertently omitted was so present; and after the long acquiescence in what had been done, the sale will be sustained as a valid sale.

    2. Under the terms of the decree in the case, and the condition of things at the time, and looking to the amount in which the commissioners were required to give security before acting, their authority to receive the purchase money may be implied.

    3. The court below having declared the sale void, it should have set it aside and ordered a re-sale. It was not competent for the court to compel the purchaser to take the land at its present value, or on any other terms than the terms on which he had purchased.

4. The payment made by the purchaser to the commissioner was a valid payment; but a check for the balance due upon a party who admitted his indebtedness to the drawer, but did not pay it, of which the purchaser had notice, is not a valid payment, and he must account for that balance, at the scaled value thereof at the day of sale, with interest from the end of the six months' credit.

George Edwards, of the county of Pittsylvania, died in 1863, intestate, leaving a widow, eleven living children, and the descendants of two who had died in his lifetime. He left a considerable estate, consisting of personal property, slaves, and two tracts of land lying on Pigg river in said county; and his son John A. Edwards and his son-in-law C. L. Powell qualified as his administrators.

It appears that soon after his death there was a suit for the sale of the slaves and they were sold by Powell, and purchased by several of the heirs.

In October, 1863, a friendly suit was brought in the circuit court of Pittsylvania, in which the widow Judith Powers and nine of the children were plaintiffs, the administrators and all the other heirs of George Edwards, except Hardin P. Edwards, were defendants, for a sale of the real estate, on the ground that partition thereof could not made in kind. Hardin P. Edwards is mentioned in the bill as one of the heirs of George Edwards, and it was by his inadvertence that nis name was omitted as a defendant in the cause.

It appears that the persons who spoke to the counsel who instituted the suit were John A. Edwards and C. L. Powell, the administrators, but it was understood by the counsel that they were acting for all the parties interested.

At the same term of the court the cause was matured, and the court made a decree appointing said John A. Edwards and Powell commissioners, either of whom might act, by public auction, to sell the said real estate, on the terms of a credit of six months, with the privilege to the

purchasers to pay the cash, if they chose so to do. But be-- fore proceeding to sell, the commissioners were required to enter into bond with good security before the clerk of the court, with condition for the faithful performance of their duties, in the sum of $40,000; and they were to report their proceedings to the court.

The commissioners executed their bond, and Powell on the 7th of November, 1863, proceeded to sell the land, when the tract of one hundred and fifty acres was bought by Wm. A. J. Finney, at the price of $90 per acre, and the other, consisting of two hundred and fifty-one acres, was bought by Christopher Davis at $70 per acre; and both of the purchasers gave their bonds for the purchase money, payable in six months; and in May, 1868, Powell made his report to the court.

At the maturity of his bond Finney paid to Powell, the commissioner, $5,000, and gave him an order on Elisha Keen for the balance, amounting to $8,680; but though Keen did not dispute the order he failed to pay it; and of this Finney had notice. Davis seems to have paid at different times his bond, except so much of it as was coming to his children, who were entitled to one share of George Edwards' estate.

Several of the children of George Edwards were present at the sale, and among them Hardin P. Edwards, and no objection was made to the sale by any of the parties present. The land was sold for a full price in Confederate money, and the sale was fairly conducted.

It appears that Powell made payments to several of the heirs, which, with the personal property and slaves purchased by them, he thought was equal to their whole interest in the estate, and among these was Hardin P. Edwards; some he could not pay because they were either in the army or inaccessible.

In January, 1871, nine of the heirs of George Edwards,

of whom Hardin P. Edwards was one, the other eight being the plaintiffs in the first suit, filed their bill in the circuit court of Pittsylvania, in which they, except Hardin P., charge that the aforesaid bill was exhibited in their names without their knowledge or consent; that they did not authorize it, and have not sanctioned it or the proceedings under it; that no valid bond was taken from the purchasers, those taken not having been stamped according to law; that the purchasers having elected to purchase on credit, the decree did not authorize the commissioners to collect any other than the cash payment, should any be made, and therefore no valid payment had been made. That the sale was made for a price vastly below its value; and if it had been possible to have brought its value, it could only be done by a prompt payment of the purchase money, then rapidly depreciating; yet Finney had not yet paid $8,680 of his purchase money, and Davis had paid $6,000 in February, 1865, when the money was almost valueless. That the sales had not been confirmed; and they insist that under the circumstances the court should refuse to confirm them; and that the plaintiff Hardin P. Edwards was not a party to the suit, and has done nothing to sanction the institution of the same or any proceedings under it. And making the commissioner and the purchasers of the land and the other heirs of George Edwards, deceased, defendants, they pray that the proceedings aforesaid may be set aside, and that the bill as to those of the plaintiffs not authorizing it may be dismissed, and all proceedings thereunder vacated, and for general relief.

Powell, Finney and Davis answered the bill. They insist the sale was conducted in strict pursuance of the decree, and that a number of the plaintiffs were present at the sale, and made no objection to it. Powell states payments he had made to several of the plaintiffs, and among them

Hardin P. Edwards, on account of the purchase money derived from the sale.

The commissioner returned his report, and taking the land at its present value, $3,343.73, which gives to each heir $257.99, and charging him with the scaled values of the money received by him, on account of the purchase money of the land, he thus ascertained the amount which each was to receive. And he fixed the amount which Finney was to pay at $1,088.92, and the amount Davis had to pay at $888.29.

The cause came on again to be heard on the 15th of November, 1874, when the court, overruling all exceptions inconsistent with the decree and sustaining said exceptions in other respects, held that the sale of the land of George Edwards, deceased, was void, because Hardin P. Edwards was not a party to the suit in which said sale was made; but that the parties who had accepted a part of their shares in the proceeds of said sale in Confederate money were responsible for said Confederate money at its scaled value; and being of opinion that the land is worth in good money $3,348.75, and that each of the parties thereinafter mentioned was entitled to 1-13 part thereof—viz., $257.99—after deducting therefrom the scaled value of the Confederate money, derived from the sale of said lands respectively received by them; and that Finney was responsible for $8,680 Confederate money at its scaled value, and that said Finney and Davis are responsible for any balance that may be required to be raised to pay the parties hereinafter named, the amount hereinafter named to be paid by them *pro rata*, according to the value of their respective purchases, before said Finney and Davis can get a title to the lands purchased by them respectively. And the court being of opinion that the whole amount due by Finney is $1,087.92, and by Davis $888.29, to be distributed as follows, viz., setting out the different parties and the amount to be

received by each one, decreed that unless the said Finney and Davis paid the said sums of $888.29 and $1,087.92 respectively, with interest thereon from the date of the decree, and the costs of suit, within sixty days, to Wm. E. Sims, who is hereby appointed a receiver to receive and disburse it to the parties aforesaid, said Sims, who is appointed a commissioner for the purpose, shall, after thirty days' advertisement, &c., proceed to sell the lands in the proceedings mentioned at auction, &c., upon the terms, &c. From this decree Finney obtained an appeal to this court.

Davis claims that he had paid all of his debt except $3,662.50, which he held as guardian of his children and grandchildren, who were entitled to one share of the estate. And Finney insisted he had paid the whole of his debt by his payment of $5,000 to the commissioner and his draft on Keen; and that he had never heard that any portion of said draft was not paid until after the surrender.

The cause came on to be heard at the May term, 1872, when the court directed Commissioner Carter to ascertain—first, the value of the land in the bill mentioned at the time of the sale, and at the time of taking the account. 2d. How much money was paid to each of the heirs of George Edwards, deceased, resulting from the sale of the land in the suit aforesaid. 3d. Which of the plaintiffs in said suit assented to the institution thereof, and which of them were non-residents at the time of its institution. 4th. What disposition was made by the defendant Powell of the money which he did not pay to the parties. 5th. The present pecuniary condition of the purchasers of the land. 6th. Who now claims title to the land. 7th. Whether any, and if any, which of the heirs have received their portion of the proceeds of sale.

The commissioner returned his report, in which he fixed the value of both tracts of land at $5.25 per acre at the time of the sale; and he fixed the value of the land pur-

chased by Finney at $8.50 per acre, and that purchased by Davis at $8.17 at the time of taking the account. He made statements showing what was the state of the accounts of each heir crediting him with his share of the personal estate and slaves and his share of the purchase money of the land which had been paid, allowing Finney credit only for the $5,000 as paid by him. And it appears that five of the heirs had received their full share of the whole fund. All but three had received more than their share of the personal estate and slaves, though the payments to two of them was of small amount. He says it does not appear from the evidence that any of the plaintiffs in the first suit assented to its being instituted. He says that the money arising from the sale of the land which was not paid to the parties to the suit is in the hands of Powell, the commissioner. And he says that Finney and Davis claim the land; and that the title to the whole of the land is now in the estate of George Edwards, deceased.

Finney and Davis excepted to the report. First to the statement that none of the heirs of George Edwards assented to the suit. 2d. Because the commissioner has reported that only those of the heirs as received their full portion of the proceeds of the land, ratified the sale. 3d. That the reports that the title to the whole of the land is in the estate of George Edwards. And because the commissioner reports that $8,680 of the purchase money of the land bought by Finney is unpaid.

In November, 1873, the court, not deciding any other question in the cause, directed the commissioner to make a statement showing what was the scaled value of $8,600 on the 27th of May, 1864; and also the scaled value of the moneys received by the heirs of George Edwards above their share of the personal estate and slaves, scaling the same as of the date when received.

*E. Barksdale, Jr.,* and *Jno. A. Meredith,* for the appellant.

*C. E. Dabney* and *W. E. Sims,* for the appellees.

MONCURE, P., delivered the opinion of the court.

The court is of opinion that there is nothing in the objection that the original suit was brought *without consent* of some of the parties, and that H. P. Edwards was not a party to the cause.   The evidence shows that *all* the parties actually or impliedly consented to the suit.   They were *all* present, in person or by representatives, at the sale of the land, and made no objection to the sale ; nor, in fact, was the supplemental bill filed until *more than seven years after the sale.*   The objection, for the reasons alleged, was an afterthought ; and never would have been made but for the changes wrought by the result of the war.   H. P. Edwards, though not a formal party to the suit (his name being inadvertently omitted), was *personally present* at the sale, and made no objection thereto then nor at any time afterwards, until the filing of the supplemental bill.   He and the rest of the heirs at law of George Edwards, deceased, even if no express consent was given by them, are estopped by their long acquiescence and other conduct from afterwards objecting to the sale for alleged want of authority to bring the suit.   Judge Gilmer was the counsel who brought the suit, and C. L. Powell and John A. Edwards, two of the parties in interest, retained him and directed him to institute the suit.

If the proceedings and sale were " void," as alleged in the decree appealed from, the decree is manifestly wrong ; for the court proceeded to give effect to the sale (although pronounced void), by requiring the purchasers to account for the land at its then present value.   This is an anomaly. If the sale was " void," it ought to have been set aside, for

it could not bind anybody, and a resale should have been ordered; or at least the purchasers should have been put to their election, either to take the land at its present value and account for such value, or to have the sale rescinded. There could be no authority, on the theory of the court that the sale was "void," to hold the purchaser peremptorily bound by it, and on terms which did not enter into the contract of purchase.

But the court is of opinion that the sale was not void. It is shown to have been made by competent authority, was regular in all respects, and was fair; no fraud nor unfairness is alleged or proved.

The sale should therefore have been confirmed, and the only question is, what the purchasers should have been required to pay. It is admitted on all hands that the sale was for Confederate money, and was intended by all parties to be for Confederate money. The commissioners were directed by the decree to sell "on a credit of six months, with privilege to the purchasers to pay the cash if they chose to do so." Before acting, they were required to give bond in the penalty of forty thousand dollars, "with condition for the faithful performance of their duties." The bond was given, and the sale made, on the credit required (six months). Finney (the purchaser of one tract, and appellant here) paid no cash, but gave his bond with surety at six months for the amount of the purchase money.

The court is of opinion that the commissioners had authority under the decree and the peculiar circumstances of this case to collect the purchase money. The decree of the 31st day of October, 1863, was for a sale of the land "on a credit of six months, with the privilege to the purchasers to pay the cash if they choose to do so." And it was further decreed that "before the said commissioners proceed to sell, they are to enter into bond with good se-

curity before the clerk of this court, with condition for the faithful performance of their duties, in the sum of forty thousand dollars, and they are to report their proceedings," &c. Whether it was intended by the decree to give to the commissioners the right to receive the purchase money of the land, not only if paid in cash at the time of the sale, but also if paid within or at the end of six months thereafter, the purchaser Finney having elected to give bond for the payment of the purchase money due by him on a credit of six months, which he was authorized to do by the said decree. This credit was manifestly given solely for his benefit. He might have given it up entirely, by the express terms of the decree, which authorized him to pay the whole amount of the purchase money in cash at the date of the sale, instead of giving his bond therefor, payable in six months. If he could give up the whole of this benefit, intended exclusively for himself, why could he not give up any part of it at his pleasure? He would have benefitted the heirs of George Edwards by giving up the whole credit and paying the purchase money in cash at the date of the sale, and he would have benefitted them, though in a less degree and proportionally by paying the money at any time after the sale and before the expiration of the credit of six months. Certainly *express* power might have been given by the decree to the commissioners to receive payment of the bond for the purchase money before it became due. Why may not the power to do so be *implied* from the circumstances of the case? Such an implication is not inconsistent with the terms of the decree or any of them, but perfectly consistent therewith. The bond which was required of and given by the commissioners was amply sufficient to cover the case; whether it was intended to apply only to the case of payment of the purchase money in cash at the time of the sale or also to the case of its payment at any time within or at the end of six months thereafter, ac-

cording to the election of the purchaser under the decree. If the bond given by the commissioners did not have that effect, a new decree would have been necessary, giving them or some other persons power to collect the bond and apply the proceeds. But no such decree ever was made, and the commissioners already appointed and all the parties concerned, including the purchaser, acted on the concession that the said commissioners had the power, and it was their duty, to collect the bond and apply the proceeds according to the rights of the parties. No objection to their power and duty to do so was made by any party concerned, but the same were acquiesced in by every such party until the 2d day of January, 1871, the date of the institution of the suit in which the decree appealed from in this case was rendered, which day was more than seven years after the date of the sale at which said Finney became a purchaser as aforesaid—to-wit, the 27th day of November, 1863—and nearly seven years after his bond for the purchase money due by him became payable—to-wit, the 27th day of May, 1864.

The court is further of opinion that the payment made by the said Finney of five thousand dollars in Confederate currency on account of the purchase money of the land bought by him as aforesaid, which became due and payable on that day, according to the terms of sale, to C. L. Powell one of the commissioners appointed to make such sale, was a valid payment to that extent, leaving due on account of the said purchase money a balance of eight thousand six hundred and eighty dollars in Confederate currency, for which balance the said Finney on that day—to-wit, the 27th day of May, 1864—gave to the said Powell, as commissioner aforesaid, a check on E. Keen, which check was intended by the said Finney and the said Powell to be payment in full of the said balance. The said Keen owed the said money, and admitted his liability for its payment, but

never did pay it, and the said Finney was informed by the said Powell of such non-payment, but never made any other payment on account of the said balance of the purchase money, which still remains due and payable by him—to-wit, eight thousand six hundred and eighty dollars in Confederate currency or its scaled value; and the only question is, as to the time at which the said amount is to be scaled—to-wit, whether at the date of the said sale or at the date at which the said purchase money became payable—to-wit, six months after the date of said sale as aforesaid?

The court is of opinion that the said balance due in Confederate money ought to be scaled as of its value at the date of the said sale, for which balance, with interest from the day on which the purchase money of the said land was payable—to-wit, the 27th day of May, 1864—the said Finney and the land purchased by him as aforesaid yet remain liable, and upon payment of which he or those claiming under him will be entitled to a conveyance of the said land from the heirs of the said George A. Edwards or those who may represent them.

One of the two purchasers at the said sale—to-wit, Davis—did not appeal, but it seems proceeded to pay the amount decreed against him. The decree appealed from must, of course, stand as against him. But it should be reversed as to the said Finney, the appellant in this case, and remanded to the court below for further proceedings to be had therein to a final decree, in conformity with the foregoing opinion.

STAPLES, J., dissented.

The decree was as follows:

The court is of opinion that the sale of land in the proceedings mentioned to the appellant, William A. J. Finney, was for purchase money payable in Confederate currency;

that a part of the said purchase money—to-wit, five thousand dollars—was duly paid by him; that the balance of the said purchase money—to-wit, eight thousand six hundred and eighty dollars in Confederate currency—yet remains due and unpaid by him; that the said balance should be scaled at the value of such currency at the date of said sale—to-wit, the 27th day of November, 1863; that the said Finney and the land purchased by him as aforesaid are liable for the payment of the said balance, with legal interest thereon from the 27th day of May, 1864, until payment, but for nothing more on account of said purchase money; and that upon the payment of which said balance and interest, the title of the said George Edwards or his heirs to the said land purchased by the said Finney ought to be released to him and his assigns.  Therefore, it is decreed and ordered that so much of the decree appealed from in this case as is inconsistent with anything hereinbefore mentioned, be reversed and annulled, and the residue thereof, so far as the said Finney is concerned, be affirmed; that this cause be remanded to the said circuit court for further proceedings to be had therein in conformity with this decree, and in pursuance of the rights of the parties respectively, or any of them; and that the appellant recover against the appellees—George H. Edwards, N. R. Edwards, C. M. Edwards, William F. Edwards, H. P. Edwards, C. A. Edwards, David Crider, William Crider, Christopher Davis, D. C. Edwards, and J. H. Reynolds—his costs by him expended in the prosecution of his appeal aforesaid here.  Which is ordered to be certified to the said circuit court.

DECREE REVERSED *as to Finney.*